UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| GARY M. ESTEY, | ) | |
| --- | --- | --- |
| Plaintiff | ) | |
| v. | ) | No. 1:13-cv-00045-DBH |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that although Plaintiff Gary Estey has certain severe impairments, he retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review the Administrative Law Judge's (ALJ) decision, Defendant's final decision is the ALJ's February 15, 2012, decision. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. § 404.1520.

In step 1 of the sequential evaluation process, the ALJ found that Plaintiff meets the insured status requirements of Title II through December 31, 2011, and has not engaged in substantial

gainful activity during the period from his September 1, 2007, alleged onset date through the date on which he was insured. (ALJ Decision ¶¶ 1-2.) At step 2, the ALJ determined that Plaintiff's only severe impairment is "anxiety disorder (post-traumatic stress disorder)." (*Id.* ¶ 3.) The ALJ also found that Plaintiff's chronic eczema impairment is not severe. (*Id.*) Finally, the ALJ concluded that Plaintiff's asserted impairments of attention deficit hyperactivity disorder, obsessive-compulsive disorder, and Graves' disease (hyperthyroidism) do not qualify as severe impairments. (*Id.*)

At step 3, the ALJ found that the combination of impairments would not meet or equal any listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P; that Plaintiff had only mild limitation in the activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties maintaining concentration, persistence, and pace; and that Plaintiff had not experienced episodes of decompensation of extended duration.[1] (*Id.* ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ determined that Plaintiff can work at all levels of physical exertion, but suffers non-exertional limitations that limit him to brief interaction with the general public and only occasional changes in workplace routine. (*Id.* ¶ 5.) At step 4, the ALJ concluded that this degree of limitation precluded past relevant work. (*Id.* ¶ 6.)

In conducting the step 5 analysis, the ALJ found that Plaintiff was born in 1964 and was thus a comparatively younger individual, and that Plaintiff has a high school education and can communicate in English. The ALJ also found that the presence of any transferrable skill was

---

[1] In reaching this conclusion, the ALJ relied at least in part on the testimony of Dr. James Claiborne. The ALJ's decision has an obvious typographical error because the ALJ omits the word "not" and states that Plaintiff would experience extended episodes of decompensation. That this is a typographical error is obvious from the context of the decision and from the ALJ's citation to Dr. Claiborne, who testified that the evidence did not indicate that Plaintiff would experience such episodes. (Hr'g Tr. at 61, PageID #130.)

immaterial to the disability determination. (*Id.* ¶¶ 7-9.) Based on this vocational profile, and the residual functional capacity findings, the ALJ, using Medical-Vocational Guideline Rule 204.00 as a framework for decision making and citing *Garcia-Martinez v. Barnhart*, 2007 WL 2240136 (1st Cir. Oct. 1, 2004), found that Plaintiff was not disabled. (*Id.* ¶ 10.)

## DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

### A. Standard of Review

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### B. Discussion

Plaintiff argues that the ALJ erred in: (1) his finding that Graves' disease does not impose severe impairment for the Plaintiff (Statement of Errors at 12-13); (2) his alleged failure in the residual functional capacity discussion to satisfy the requirements of Ruling 96-8p because the ALJ did not discuss the findings of the Bureau of Rehabilitation Services to an adequate degree (*Id.* at 2-10); and (3) his failure to rely on vocational expert testimony to support the "framework" decision at Step 5 (*Id.* at 10-12).

3

*1.  Graves' Disease*

Plaintiff contends that his Graves' disease imposes more than slight limitations in connection with symptoms that share many of the same characteristics as the symptoms of his anxiety disorder. (*Id.* at 12.) Plaintiff maintains that the statements of Dr. Hall and Dr. Claiborne at the hearing support a finding that Plaintiff's impairment resulting from the disease is severe. (*Id.* at 12-13, citing R. 92, 104.)

The ALJ called William Hall, M.D., as a witness at the hearing to address Plaintiff's physical impairments. Dr. Hall reviewed the medical records and was present for Plaintiff's hearing testimony. (PageID # 120.) Dr. Hall testified that the symptoms that Plaintiff experiences as a consequence of Graves' disease are not medically limiting "except in a periodic fashion," and that the disease has been responsive to medication and has resulted in flare ups only when Plaintiff has discontinued his medication. (*Id.* # 122.) Simply stated, this testimony, which is consistent with the medical records, constitutes substantial evidence to support the ALJ's conclusion regarding the lack of physical limitation caused by Graves' disease.

The ALJ called James Claiborne, Ph.D., as a witness at the hearing to address Plaintiff's mental impairments. Dr. Claiborne was present for Plaintiff's testimony and reviewed Plaintiff's medical records. Dr. Claiborne testified that Plaintiff's medically determinable mental impairment is an anxiety disorder that is "best described as post-traumatic stress disorder." (*Id.* # 128.) Applying the psychiatric review technique, Dr. Claiborne assessed mild restrictions in activities of daily living, mild social restrictions, and moderate restrictions in concentration, persistence, and pace. (*Id.* # 129-30.) He found no evidence in the record of extended episodes of decompensation. (*Id.* # 130.) Dr. Claiborne opined that Plaintiff would experience difficulty carrying out detailed or complex instructions, but would be able to follow simple to moderately complex instructions.

(*Id.* # 131.) Dr. Claiborne further testified that while Plaintiff would likely not have difficulty interacting with supervisors or coworkers, Plaintiff's tendency to be overly talkative could cause problems with the public unless he had only "relatively limited interaction." (*Id.*)

As to the impact of Graves' disease on Plaintiff's mental symptoms, Dr. Claiborne suggested the potential for it to be "profoundly symptomatic" if "severely under managed." (*Id.* # 132.) However, according to Dr. Claiborne, if adequately managed, the symptoms would be limited to some experiences that Plaintiff might attribute to anxiety, such as "some increase of heart rate, and shakiness, things like that." (*Id.*)

The testimony of Dr. Claiborne, the medical records, and some of the testimony of Dr. Hall support the ALJ's determination that the Graves' disease and its related symptoms, when properly medicated, do not constitute severe impairment. The ALJ's determination, therefore, is supported by substantial evidence on the record.

## 2. *Residual Functional Capacity*

### a. *Vocational rehabilitation evidence*

Plaintiff argues that the ALJ did not discuss sufficiently the relevance of a World of Work Inventory assessment performed by the Maine Department of Labor, Bureau of Rehabilitation Services (BRS). That report suggests, among other things, that Plaintiff has needs that must be satisfied in order for him to transition successfully into the workplace, and that he will likely face certain discrete vocational challenges that are discussed at length by Plaintiff in his Statement of Errors. According to Plaintiff, although the ALJ referenced the report, the ALJ was required to engage in a more thorough analysis of the report. Plaintiff's argument is evidently founded on Social Security Ruling 96-8p, which provides that determinations of a claimant's residual functional capacity will be based on "all of the relevant evidence in the case record," but must

5

ultimately be "based solely on the individual's impairment(s)." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, at *2 (July 2, 1996).

In support of his position, Plaintiff cites several observations in the BRS report (Exh. 9E), which observations suggest that Plaintiff will have difficulty meeting the applicable standards in any future occupation and would need intensive vocational coaching services. In Plaintiff's view, this exhibit is "highly relevant" and warranted a more in depth discussion and consideration.

At the hearing, when asked to consider some of the vocational counseling observations in the BRS, Dr. Claiborne acknowledged that while Plaintiff tends to get distracted, the degree of distraction is consistent with moderate limitation in concentration, persistence, and pace. In fact, Dr. Claiborne referenced this as a basis for his recommended restriction concerning public interaction.

Nevertheless, Plaintiff argues that the ALJ did not sufficiently consider all of the relevant evidence, including Plaintiff's vocational rehabilitation evidence. As mentioned above, in support of this position, Plaintiff points to Social Security Ruling 96-8p, which states that determinations of a claimant's residual functional capacity will be based on "all of the relevant evidence in the case record," but must ultimately be "based solely on the individual's impairment(s)." 1996 WL 374184, at *2. In addition to the medical records, relevant evidence includes "lay evidence," "recorded observations," "evidence from attempts to work," and "work evaluations." *Id.* at *5. Evidence of inability to perform work activity "satisfactorily without more supervision or assistance than is usually given," and evidence of a need to perform work "under special conditions," may indicate that a claimant is not capable of performing substantial gainful activity. 20 C.F.R. § 404.1573(b), (c).

Contrary to Plaintiff's argument, the ALJ's decision reflects that the ALJ considered Plaintiff's receipt of vocational rehabilitation (VR) services in reaching the residual functioning capacity findings. The ALJ specifically considered the evidence of VR services and other social services in relation to Plaintiff's activities of daily living (PageID # 54-56), and the relationship of the daily activity level to the disability assessment. Indeed, the ALJ wrote that he considered the information regarding Plaintiff's daily activities to be of "some evidentiary weight, insofar as they offer certain insights into challenges that the claimant might face in some work settings." (*Id.* # 56.) As for the BRS World of Work Inventory report and related records, the ALJ stated that he reviewed them and concluded that they were only of limited value to the residual functional capacity determination. In particular, the ALJ wrote that the findings and records "take into consideration numerous factors that are not particularly relevant to the Social Security Administration's disability determination process," including issues such as "the availability of child care, the availability of transportation, the availability of time within which to work, the interference of personal life with work, [and] the individual's job preferences," while at the same time not emphasizing factors important to the disability analysis such as "objective evidence" supporting medical diagnoses and residual functional capacity assessments. (*Id.*) Additionally, the ALJ noted that portions of the records were not favorable to a finding of disability and tend to suggest that lifestyle factors play a great role in Plaintiff's vocational difficulties, including child care obligations, a significant other who interferes with his employment efforts, and legal matters that have demanded his time and attention. (PageID # 57.) The ALJ also identified evidence in the records that reflected both positively and negatively on Plaintiff's claim. (*Id.* # 57-59.) Ultimately, the ALJ found that the evidence did not warrant a departure from the assessments provided in Dr. Quinn's medical source statement and in Dr. Claiborne's testimony. In other

7

words, the ALJ assessed and evaluated the evidence, and found more persuasive the expert testimony of Dr. Claiborne and the evidence that demonstrated that Plaintiff's vocational readiness deficits were not disabling, but were predominantly the product of non-disability factors.

Not only can the ALJ determine which evidence is more persuasive, he must make that determination. "Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case." SSR 06-03p, *Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and NonGovernmental Agencies*, 2006 WL 2329939, at *5 (Aug. 9, 2006). The BRS report is but a part of the evidence that the ALJ considered. He was not compelled to issue an order in accord with the BRS findings.[2]

        *b.     Dr. Quinn's consultative examination source statement*

Plaintiff argues that the ALJ's reliance on Dr. Quinn required the ALJ to issue a decision in accord with the BRS findings. Plaintiff specifically points to Dr. Quinn's statement that Plaintiff "may have difficulties at times in an occupational setting" when it comes to social interactions, concentration, persistence, pace, and emotional stability. First, as Defendant notes, language in a medical source statement such as "may" can be rejected by the ALJ based on independent findings. (Opposition at 12, citing *Mills v Apfel*, 84 F. Supp. 2d 146, 149 n.6 (D. Me. 2000).) More importantly, as discussed above, the ALJ is required to assess all of the evidence to determine which evidence is most compelling. Here, the record reflects that the ALJ examined all of the relevant evidence, and that the ALJ's residual functioning capacity analysis and conclusion are

---

[2] The ALJ "should explain the consideration given to these decisions," but is not "bound by disability decisions by other governmental and nongovernmental agencies." 2006 WL 2329939, at *7.

supported by substantial evidence on the record. The ALJ's determination is not, as Plaintiff suggests, based on the ALJ's failure to consider certain evidence, his misapplication of the law, or his judging matters that are reserved for expert witnesses.

### 3. *Need for Vocational Testimony*

Plaintiff also complains that the social limitation identified by the ALJ in his residual functional capacity finding is of such significance to compel a finding of disability based on application of the framework of the Guidelines at step 5. In the assessment of this issue, the case of *Garcia-Martinez v. Barnhart*, 11 Fed. App'x 22 (1st Cir. Oct. 1, 2004) (*per curiam*), is instructive. In the case, the Court of Appeals affirmed the entry of judgment upholding the Commissioner's denial of disability benefits where the "framework" of the Guidelines established the existence of other work in substantial numbers despite the fact that Ms. Garcia's residual functional capacity assessment included a limitation to work that was routine and repetitive, that lacked "undue pressure," and that involved no interaction with the public. *Id.* at 23. Plaintiff's residual functional capacity in this case is materially indistinguishable from the residual functional capacity in *Garcia-Martinez*. That is, here, as in *Garcia-Martinez*, the Guidelines do not compel a finding of disability in the absence of expert vocational testimony, but rather, support a finding of not disabled. In short, because the ALJ's residual functional capacity finding is adequately supported by the record, as previously discussed, there is no legal error in the ALJ's step 5 determination to use the Guidelines in a "streamlined" fashion to satisfy Defendant's burden. *Ortiz v. Sec'y of HHS*, 890 F.2d 520, 524 (1st Cir. 1989).

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

March 26, 2014